**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**LUFKIN DIVISION**

| | |
|---|---|
| JANE DOE (R.B.), an individual,<br><br>*Plaintiff*,<br><br>v.<br><br>CHOICE HOTELS INTERNATIONAL SERVICES CORP., CHOICE HOTELS INTERNATIONAL, INC., AND S&S HOTELS, INC.<br><br>*Defendants*. | Civil Action No.: 9:26-cv-00019 |

**DEFENDANT CHOICE HOTELS INTERNATIONAL, INC.'S**
**MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND**
**INCORPORATED MEMORANDUM IN SUPPORT**

Choice Hotels International, Inc. and Choice Hotels International Services Corp. (collectively "Choice") move to dismiss Plaintiff's Complaint (ECF No. 1, "Compl.") with prejudice, under Fed. R. Civ. P. 12(b)(6).

## I. INTRODUCTION

Plaintiff alleges that she was trafficked at various hotels in the Northern District of Georgia, including a hotel with which Choice had entered into a contractual franchise agreement. *See, e.g.*, Compl., ¶¶ 1-2. Based on that contractual relationship, Plaintiff now brings three claims against Choice: (1) a "beneficiary" or "participant" statutory claim under the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595(a); (2) a vicarious liability claim predicated on alleged violations of the TVPRA committed by S&S Hotels, Inc. ("Franchisee"), the hotel's independent owner / operator and Choice's purported Franchisee, whom Plaintiff alleges acted as Choice's agent; and (3) a non-cognizable secondary liability under the Child Abuse Victims' Rights Act ("CAVRA"), 18 U.S.C. § 2255. Notably, all three of these claims, and the

conclusory allegations underlying them, are virtually identical to those brought by this same counsel throughout the country. The only difference is that Plaintiff swaps out the word "Choice" in place of her allegations against the other named franchisors in other entirely distinct cases.

Plaintiff's Complaint should be dismissed with prejudice for several reasons. First, Plaintiff's claim under the TVPRA, 18 U.S.C. § 1595(a), contravenes the language of that statute and how a host of courts have applied that text to franchisors like Choice. Second, Plaintiff's vicarious liability claim is similarly legally invalid and does not plausibly plead Choice's agency control over the independent owner / operator ("Franchisee"). Third, Plaintiff's claim under CAVRA is not cognizable, as that statute does not support secondary liability. Finally, dismissal of Plaintiff's CAVRA claim would undermine her theory of venue in this Court and require transfer.

## II.     ISSUES PRESENTED

1.   Has Plaintiff sufficiently pled a claim under 18 U.S.C. § 1595 against Choice?

2.   Has Plaintiff sufficiently pled a valid vicarious liability claim against Choice?

3.   Has Plaintiff sufficiently pled a valid secondary liability claim under 18 U.S.C. § 2255 against Choice?

## III.     LEGAL STANDARDS

To survive a motion to dismiss, a plaintiff must state a legally cognizable claim that is at least plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A Plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). The well-pled allegations must "provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true raise a right to relief above the speculative level." *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citation omitted).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to satisfy the pleading requirements. *Iqbal*, 556 U.S. at 678. Further, "[a] document that is referenced in the complaint and is integral and central to plaintiff's claim may be considered without converting a motion for judgment on the pleadings to a motion for summary judgment." *J.G. Alcazar Holdings, LLC v. Prot. One Alarm Monitoring, Inc.*, 2016 WL 11773109, at \*5 (W.D. Tex. Dec. 15, 2016) (internal quotations and citations omitted).

## IV. ARGUMENT

### A. Count I: Plaintiff Fails to State a TVPRA Claim Against Choice.

Plaintiff's first claim is brought under the TVPRA, which provides, in relevant part, that "[a]n individual who is a victim of [a criminal trafficking offense] may bring a civil cause of action against . . . whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged [in a criminal trafficking offense]." 18 U.S.C. § 1595(a); *see* Compl. ¶¶ 119-22.[1] Such claims are referenced as "participant" or "beneficiary" claims.

In its seminal decision in *Doe #1 v. Red Roof Inns, Inc.*, one of a series of four independently filed cases with similar allegations, brought by different Plaintiffs, the Eleventh Circuit Court of Appeals defined the elements of a participant claim: a plaintiff must show that the defendant "(1) knowingly benefited (2) from participating in a venture; (3) that venture violated the TVPRA as to the [plaintiff]; and (4) the [defendant] knew or should have known that the venture violated the TVPRA as to the [plaintiff]." 21 F.4th 714, 723 (11th Cir. 2021); *see also*

_____

[1] The TVPRA also creates a cause of action against the "perpetrator" of a trafficking offense. 18 U.S.C. § 1595(a). That cause of action is not implicated here.

*Lydia K. v. G6 Hospitality Franchising, LLC*, No. 3:25-CV-0755, 2026 WL 370057, at *2 (N.D. Tex. Feb. 10, 2026) (similar).

Construing the text of the statute, the Eleventh Circuit defined several key terms. First, looking to dictionaries, the Court defined a "venture" as "an undertaking or enterprise involving risk and potential profit." *Red Roof*, 21 F.4th at 724 (citing *Venture*, Black's Law Dictionary (11th ed. 2019)). Similarly, the Court held that "[t]he ordinary meaning of participate or participation is to take part in or share with others in common or in an association" *Id.* at 725 (citing *Participation,* Black's Law Dictionary (11th ed. 2019)). Putting these two definitions together, the Court held that "the phrase 'participation in a venture' requires that the [plaintiff] allege that the [defendant] took part in a common undertaking or enterprise involving risk and potential profit." *Id.* Second, the Court made clear that, under the statute, the plaintiff must allege "that the defendant had constructive or actual knowledge that the undertaking or enterprise [*i.e.*, the venture] violated the TVPRA as to the plaintiff." *Id.* at 719. In other words, knowledge would need to be victim specific.

The Court applied these elements in the consolidated cases before it, which involved allegations of trafficking brought by four separate plaintiffs against various hotel franchisors. *See id.* at 718–19. Those plaintiffs alleged that the franchisors controlled operations and the rental of rooms at the respective hotels with whom they had entered contractual agreements and financially benefitted from the rental of rooms to plaintiffs' traffickers in the form of a percentage of hotel revenues. *Id.* at 727. The Court found that these allegations were insufficient to state a TVPRA claim:

> These allegations may [have] suggest[ed] that the franchisors financially benefitted from renting hotel rooms to the [plaintiffs'] sex traffickers. But they d[id] nothing to show that the franchisors participated in a common undertaking involving risk or profit that violated the TVPRA—*i.e.*, the alleged sex trafficking ventures.

*Id.* at 726–27. The Court further noted that while the plaintiffs alleged that the franchisors had sent inspectors to the hotels who purportedly would have seen signs of trafficking and read reviews of the hotels mentioning commercial sex work, "observing something is not the same as participating it." *Id.* at 727.

Since its decision in *Red Roof*, the Eleventh Circuit has expanded its reasoning to include hotel owner/operators. *See K.H. v. Riti, Inc.* No. 23-11682, 2024 WL 505063, at *4 (11th Cir. Feb. 9, 2024). The D.C. Circuit Court of Appeals has also reached a similar conclusion in a case involving allegations of labor trafficking. *See Doe #1 v. Apple, Inc.*, 96 F.4th 403, 415 (D.C. Cir. 2024) ("[S]omething more than engaging in an ordinary buyer-seller transaction is required to establish 'participation' in an unlawful venture."). And a large number of District Courts across the country—including this very Court—have rejected claims similar to Plaintiff's, on both participation and knowledge grounds.[2] The logic of these decisions make clear that Plaintiff's claim should be dismissed.

---

[2] *See Lydia K. v. G6 Hospitality Franchising, LLC*, No. 3:25-CV-0755, 2026 WL 370057 (N.D. Tex. Feb. 10, 2026); *P.T.L. v. Choice Hotels Int'l, Inc.*, No. 25-1812, 2025 WL 3280239 (E.D. La. Jan. 22, 2026); *C.T.K. v. Choice Hotels Int'l, Inc.*, No. 25-C-1274, 2026 WL 84449 (E.D. Wis. Jan. 12, 2026); *P.T.L. v. Choice Hotels Int'l, Inc.*, No. 25-1812, 2025 WL 3280239 (E.D. La. Nov. 25, 2025); *N.G. v. G6 Hosp. Prop. LLC*, Case No. 6:24-cv-2379-JA-DCI, 2025 WL 2676101 (M.D. Fla. Sept. 18, 2025); *S.B.C. v. Six Continents Hotels, Inc.*, Case No. 2:24-cv-01985-RAJ, 2025 WL 2637655 (W.D. Wash. Sept. 12, 2025); *Powell v. W. Express, Inc.*, 795 F. Supp. 3d 1032 (M.D. Tenn. Aug. 11, 2025); *C.A.A. v. Hyatt Corp.*, Civil Action No. 3:24-CV-01229-N, 2025 WL 1953857 (N.D. Tex. July 15, 2025); *B.C. v. G6 Hosp. Prop. LLC*, CASE NO. 3:25-cv-05057-DGE, 2025 WL 1837620 (W.D. Wash. July 3, 2025); *Doe v. Six Continents Hotels Inc.*, Case No. CV 24-11219-MWF (AJRx), 2025 WL 2020003 (C.D. Cal. June 26, 2025); *N.G. v. G6 Hosp. Prop. LLC*, Case No. 6:24-cv-2379-JA-DCI, 2025 WL 1332210 (M.D. Fla. May 7, 2025); *A.L. v. G6 Hosp. Prop. LLC*, Case No. 25-80056-CV-MIDDLEBROOKS, 2025 WL 1151750 (S.D. Fla. Apr. 18, 2025); *A.L. v. G6 Hospitality Prop. LLC*, No. 25-80056-CV, 2025 WL 1151750, at *1 (S.D. Fla. Apr. 18, 2025); *Catelyn H. v. G6 Hosp., LLC*, Case No.2:24-CV-939 JCM (DJA), 2025 WL 929032 (D. Nev. Mar. 26, 2025); *J.M. v. Wyndham Hotels & Resorts, Inc.*, Case No. 20-cv-00656-BLF, 2025 WL 523894 (N.D. Cal. Feb. 18, 2025); *S.J.C. v. ESA P Portfolio LLC*, Civil Action No. 1:24-CV-02423-JPB, 2024 WL 4808137 (N.D. Ga. Nov. 15, 2024); *J.M. v. Red Roof Inns,*

**1.      Plaintiff Has Failed to Plausibly Plead Choice's "Participation in a Venture"**

The bulk of Plaintiff's allegations focus on Defendants' supposed failures to detect and halt her trafficking through various training and prevention programs. *See, e.g.*, Compl., ¶¶ 33–39. These are not allegations of "participation" in a venture, but of failing to prevent Plaintiff's trafficking, a theory that numerous courts have rejected. *See, e.g.*, *Lydia K.*, 2026 WL 370057, at *4 (finding insufficient "allegations [that] amount to failures to curtail traffickers rather than participation in any venture"); *P.T.L.*, 2025 WL 3280239, at *7 ("the TVPRA does not impose an affirmative duty to prevent sex trafficking") (citation and internal quotation marks omitted); *Doe (K.E.C.) v. G6 Hosp., LLC*, 750 F. Supp. 3d 719, 734 (E.D. Tex. 2024) ("[A] plaintiff who merely alleges that the franchisor failed to intervene, alert authorities, improve awareness, or prevent sexual exploitation insufficiently alleges direct participation in a venture."); *Doe (K.B.) v. G6 Hospitality, LLC*, No. 1:23-CV-2597-TWT, 2024 WL 4701891, at *3 (N.D. Ga. Nov. 5, 2024) (collecting cases); *A.D. v. Marriott Int'l, Inc.*, No. 2:22-cv-645, 2023 WL 2991042, at *4 (M.D. Fla. Apr. 18, 2023) ("The Complaint . . . fault[s] Defendants for taking ineffective steps to curtail the traffickers. This hardly sounds like participating in a venture.").[3] Tellingly, many of Plaintiff's

---

*Inc.*, No. 2:22-cv-00672-KJM-JDP, 2024 WL 4534479 (E.D. Cal. Oct. 21, 2024); *S.C. v. Wyndham Hotels & Resorts*, No. 1:23-cv-00871, 2024 WL 1429114 (N.D. Ohio. Apr. 2, 2024); *K.O. v. G6 Hosp., LLC*, No. 22-11450, 2024 WL 1396269 (E.D. Mich. Mar. 31, 2024); *Doe (A.S.) v. Wyndham Hotels & Resorts*, No. 6:23-cv-00033-C, ECF No. 67 (N.D. Tex. June 10, 2024);*Doe v. Wyndham Hotels & Resorts*, No. 8:23-cv-01554-JVS (JDEx), 2024 WL 2104596 (C.D. Cal. Feb. 28, 2024);*B.J. v. G6 Hosp., LLC*, No. 22-cv-03765, 2023 WL 6120682 (N.D. Cal. Sept. 18, 2023); *A.B. v. Extended Stay Am. Inc.*, No. 3:22-CV-05939-DGE, 2023 WL 5951390 (W.D. Wash. Sept. 13, 2023); *J.K. v. Ramada Worldwide, Inc.*, Civil Action File No. 1:23-cv-108-TWT, 2023 WL 5621913 (N.D. Ga. Aug. 30, 2023); *K.M. v. CPA Hotels of Atlanta, LLC*, Civil Action File No. 1:23-cv-190-TWT, 2023 WL 5747490 (N.D. Ga. Ag. 30, 2023); *A.D. v. Choice Hotels Int'l, Inc.*, No. 2:22-cv- 646, 2023 WL 5510090 (M.D. Fla. Aug. 25, 2023).

[3] *See also C.C. v. H.K. Grp. of Co., Inc.*, No. 1:21-CV-1345, 2022 WL 467813, *4 (N.D. Ga. Feb. 9, 2022); *B.M. v. Wyndham Hotels & Resorts, Inc.*, No. 20-cv-00656-BLF, 2020 WL 4368214, *7 (N.D. Cal. July 30, 2020).

allegations of participation employ the verb "facilitate." But that term appears nowhere in § 1595(a), and Courts "will not rewrite a federal statute" simply to assist a plaintiff's pleading. *King Ranch, Inc. v. United States*, 946 F.2d 35, 37 (5th Cir. 1991).

Beyond Plaintiff's conclusory allegations of facilitation, the sole remaining participatory allegation is that Choice, despite only being a franchisor, played some kind of marginal role in the rental of rooms at the hotel. *See* Compl., ¶ 88. Indeed, Plaintiff does not actually allege that *Choice* rented rooms to her traffickers, but only that, in some circumstances, Choice may have played a tangential role in the room rental process. This falls below what numerous other Texas District Courts have required for participation: "an ongoing interest in the success of a specific venture and elect[ing] to further the ends of the venture beyond what would reasonably be expected in an ordinary commercial transaction." *Lydia K.*, 2026 WL 37005, at *3 (quoting *Doe (S.M.A.) v. Salesforce, Inc.*, No. 3:23-CV-0915, 2024 WL 1337370, at *13 (N.D. Tex. 2024)); *see also Apple*, 96 F.4th at 415 ("something more than engaging in an ordinary buyer-seller transaction is required to establish 'participation' in an unlawful venture"); *Riti*, 2024 WL 505063, at *4 (allegations that a hotel operator "financially benefitted from renting hotel rooms to [the] trafficker and that . . . observed signs of sex trafficking at the hotel . . . . are not sufficient to establish that the defendant participated in a sex trafficking venture and observing signs of sex trafficking 'is not the same as participating in it'") (quoting *Red Roof*, 21 F.4th at 727).[4]

Plaintiff also alleges, without detail, that "hotel staff would turn a blind eye" to indicia of trafficking. Compl. ¶ 98(d). Even under a presumption of truth, "observing something is not the

---

[4] Plaintiff's fundamental theories of Choice's liability require evaluation of the contractual agreement that actually governs the relationship between Choice and its alleged Franchisee. Plaintiff's allegations regarding this agreement, and the duties and powers that stem from it, should be taken as legal conclusions, which do not benefit from presumptions of truth or accuracy.

same as participating in it." *Red Roof*, 21 F.4th at 727. Indeed, stronger allegations of staff involvement were rejected in *Red Roof*. *See id.* at 714 ("Some of the hotels' employees worked with the traffickers by, for example, acting 'as lookouts, notifying traffickers if police were present.' Traffickers paid these employees in cash or drugs."). And still stronger allegations—for example, that a trafficker "'forced [plaintiff] to have sex with more than one staff member of Defendant'"—have also been found insufficient. *A.L. v. G6 Hospitality Prop. LLC*, No. 25-80056-CV, 2025 WL 1151750, at *1 (S.D. Fla. Apr. 18, 2025); *see also Lydia K.*, 2026 WL 370057, at *4. In *A.L.*, the Court observed:

> [W]hile Plaintiff's alleged abuse at the hands of hotel staff may suggest that her trafficker was in cahoots with some unknown staff, it does not suggest a venture existed between Plaintiff's trafficker and the *hotel*—the named party. Plaintiff does not claim Defendant was engaged in a venture with Plaintiff's trafficker through its staff; only that the staff's abuse may be evidence Defendant *knew* about Plaintiff's status as a victim. This does not establish a venture.

*Id.* at *3 (emphasis in original); *see N.G. v. G6 Hospitality Prop. LLC*, No. 6:24-cv-2379-JA-DCI, 2025 WL 1332210, at *2 (M.D. Fla. May 7, 2025) (finding insufficient that "'a male front desk employee . . . would come to the room to smoke crack and get a sex act performed on him'"). If such allegations do not state a TVPRA claim, then Plaintiff's own claim—in which she has not alleged any interactions at all with anyone associated with or employed by Choice—must also fail.

That lack of association between Plaintiff and her trafficker(s) and Choice leads to a further defect with Plaintiff's theory for Choice's "participation in a venture." As a franchisor, Choice was necessarily "one step removed from the sex traffickers (*i.e.*, street-level trafficker — > hotel — > hotel franchisor)." *G.G. v. Salesforce.com*, 76 F.4th 544, 562 (7th Cir. 2023). Plaintiff does not clearly plead any contact between any Choice personnel and either herself or her trafficker(s). But "[w]ithout direct contact, there can be no direct liability." *S.C. v. Wyndham Hotels & Resorts, Inc.*, 728 F. Supp. 3d 771, 778 (N.D. Ohio 2024). Put differently, there can be nothing "common"

among a venture's participants when they do not have any linkages. *See Mueller v. Deutsche Bank Aktiengesellschaft*, 777 F. Supp. 3d 329, 338 (S.D.N.Y. 2025) ("Without having interacted with their allegedly ISIS-connected accountholders any more or differently than they would with their many other customers, the defendants cannot be said to have 'tak[en] part or shar[ed] in an enterprise or undertaking' with them.") (quoting *Apple Inc.*, 96 F.4th at 415). As Plaintiff has failed to plead Choice's "participation in a venture," her claim should be dismissed.

### 2. Plaintiff Has Failed to Plead Choice's Actual or Constructive Knowledge of Her Allegations.

Plaintiff's failure to plausibly allege that Choice "had constructive or actual knowledge that the [venture] violated the TVPRA as *to the plaintiff*" is also grounds for dismissal. *Red Roof*, 21 F.4th at 723 (emphasis added).[5] Plaintiff cites various awareness campaigns regarding the existence of trafficking activity in the hospitality industry. *See* Compl., ¶¶ 46-50. But "general knowledge about sex trafficking's prevalence is not enough on its own to show that [a defendant] should have known about [a plaintiff's *own*] trafficking." *S.C.*, 2024 WL 277117, at *1.[6]

Plaintiff also offers a list of "red flags" that she claims should have indicated that she was being trafficked. *See, e.g.*, Compl., ¶ 68-69. But, as a recent opinion explained, "[u]nless the hotel staff was stationed outside her door, which is not plausible, several of these 'red flags'"—such as

---

[5] *See Lydia K.*, 2026 WL 370057, at *3; *S.C. v. Wyndham Hotels & Resorts, Inc.*, No. 1:23-CV-00871, 2024 WL 277117, at *1 (N.D. Ohio Jan. 25, 2024) (holding that plaintiff must show defendant "'knew or should have known' about *her trafficking*") (emphasis added); *see also C.T.K.*, 2026 WL 84449, at *7; *P.T.L.*, 2025 WL 3280239, at *7; *B.M. v. Wyndham Hotels & Resorts, Inc.*, No. 20-cv-00656-BLF, 2020 WL 4368214, *6 (N.D. Cal. July 30, 2020); *Doe #9 v. Wyndham Hotels & Resorts*, No. 4:19-CV-5016, 2021 WL 1186333, at *1 (S.D. Tex. Mar. 20, 2021); *H.G. v. Inter-Cont'l Hotels Corp.*, 489 F. Supp. 3d 697, 705 (E.D. Mich. 2020).

[6] *See S.J. v. Choice Hotels Int'l, Inc.*, 473 F. Supp. 3d 147, 154 (E.D.N.Y. 2020) (franchisors' "general[] aware[ness] that sex trafficking sometimes occurred on their franchisees' properties unjustifiably bridges the scienter gap between 'should have known' and 'might have been able to guess'"); *E.S. v. Best Western Int'l, Inc.*, 510 F. Supp. 3d 420, 428 (N.D. Tex. Jan. 4, 2021).

heavy foot traffic or the presence of unknown individuals—"would have been known only to Plaintiff and her trafficker." *C.T.K.*, 2026 WL 84449, at *5. As the Court noted, "hotels are not law enforcement agencies," and "[t]he TVPRA does not require hotels to monitor or surveil their guests." *Id.* at *6.

Plaintiff pleads—again in mere conclusory fashion—that hotel staff (not Choice employees) saw these purported "red flags," and that this establishes knowledge of trafficking. Compl., ¶¶ 68-72. But this cannot be plausible. To begin, the allegations are wholly "conclusory." *Iqbal*, 556 U.S. at 678. They are so vague and generalized that it is unclear *which* staff saw *which* indicia. *E.g.*, Compl., ¶ 69-72 (not providing any details as to which staff members observed the "red flags"); *id.* ¶ 73 (alleging catchall of "other sources of non-public information"); *id.* ¶ 74 (alleging Choice should have had knowledge based on "other sources of information"). More specific allegations than those asserted here—such as hotel staffs' ability to identify discrete individuals engaging in commercial sex and track their presence on the premises, including through facial recognition technology—would still not suffice. *See, e.g.*, *Alice J. v. Dhillon, et al.*, No. 3:25-CV-00246-MMD-CSD, 2026 WL 622734, at *4 (D. Nev. Mar. 5, 2026).

Even if one assumes that all of the supposed red flags were observed by employees of the independent hotel owner/operator, Plaintiff does not plausibly explain how Choice—which Plaintiff identifies as being located in Delaware, *see* Compl. ¶ 9—could have knowledge of these events. *Cf. A.B. v. Shilo Inn, Salem, LLC*, No. 3:23-cv-00388-IM, 2023 WL 5237714, at *5 (D. Or. Aug. 15, 2023) (finding that, while plaintiff alleged the presence of "numerous surveillance cameras throughout the hotel," plaintiff "fail[ed] to allege facts to establish that any particular [hotel] employee *witnessed* these signs or was otherwise aware of Plaintiff's trafficking"). As Plaintiff has failed to allege Choice's knowledge, her TVPRA claim should be dismissed.

**B.      Plaintiff's Vicarious Liability Claims Against Choice Should Be Dismissed.**

Plaintiff similarly claims that Choice is vicariously liable for franchisee's alleged TVPRA violations. *See* Compl., ¶¶ 105-09. But, as with her CAVRA claim under 18 U.S.C. § 2255, *infra*, nothing in the text of the TVPRA explicitly recognizes a vicarious liability claim. *See* 18 U.S.C. § 1595(a). And, as detailed below, the Supreme Court has cautioned against reading forms of "secondary liability" into federal statutes. *See, e.g., Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 177, 184 (1994).

Plaintiff's theory of vicarious liability also fails because she does not plausibly plead TVPRA claims against the Franchisee, whether as a perpetrator or participant. *See, e.g., E.S.*, 510 F. Supp. 3d at 428. That failure disposes of her vicarious liability claim. *See id.*; *A.B.*, 532 F. Supp. 3d at 1028; *A.B. v. Hilton Worldwide Holdings, Inc.*, 484 F. Supp. 3d 921, 940-41 (D. Or. 2020).

Even taken on its own terms, the claim is insufficient. Vicarious liability requires plausible allegations of agency in the form of "control over the *actual day-to-day work* occurring at that location." *K.O. v. G6 Hosp., LLC*, 728 F. Supp. 3d 624, 650 (E.D. Mich. 2024). That is because "[a] franchisor must be permitted to retain such control as is necessary to protect and maintain its trademark, trade name and goodwill, without the risk of creating an agency relationship with its franchisees." *Walker v. Pacific Pride Serv., Inc.*, 341 F. App'x 350, 351-52 (9th Cir. 2009) (citation omitted). Texas law recognizes these considerations in its agency law. *See Cardinal Health Solutions, Inc. v. Valley Baptist Med. Ctr.*, 643 F. Supp. 2d 883, 889 (S.D. Tex. 2008)

Here, Plaintiff fails to plausibly allege an actual agency relationship between Choice and alleged Franchisee. Her allegations regarding control amount to nothing more than irrelevant policies wholly unrelated to trafficking designed to protect the brand (as required by the Lanham Act), and are wholly unrelated to any alleged trafficking experienced personally by Plaintiff.

Compl., ¶¶ 87-88. Other allegations are entirely conclusory and amount to "mere recitations of the requirements for franchisor liability." *Red Roof*, 21 F.4th at 729; *see, e.g.* Compl., ¶ 87 (alleging that Choice retained and used its right of control concerning a non-exhaustive list of items, none of which include alleged facts beyond generic descriptions).[7] Plaintiff makes no effort to tie Choice's "control" with respect to "trafficking matters," or even differentiate her repeated allegations between separate hotel franchisors she has named as Defendants.

Plaintiff's factual allegations do not reflect a "right to control the day-to-day operations" of this independently owned and operated hotel. *Red Roof*, 21 F.4th at 729. Instead, they merely make conclusory statements, or relate to "a franchisor's control over uniformity and standardization across franchises," which are "insufficient to establish the level of domination that would render a franchisee's independence a fiction." *S.J.*, 473 F. Supp. 3d at 155 (citation and internal quotation marks omitted); *see K.B.*, 2024 WL 4701891, at *4.[8] Rather, "'[t]he clear trend in the case law in other jurisdictions is that the quality and operational standards and inspection rights contained in a franchise agreement *do not* establish a franchisor's control or right of control over the franchisee sufficient to ground a claim for vicarious liability.'" *Allen v. Choice Hotels Int'l, Inc.*, 276 F. App'x 339, 343 (4th Cir. 2008) (emphasis added) (quoting *Kerl v. Dennis Rasmussen, Inc.*, 273 Wis.2d 106, 126 (2004)).

**C.      Count III: Section 2255 does not Provide for Secondary or Vicarious Liability.**

Plaintiff's third count is brought under CAVRA, 18 U.S.C. § 2255. Her theory of liability for this claim does not posit that Choice is criminally responsible for her trafficking. Instead,

---

[7] *See, e.g.*, Compl. at ¶ 87(f) ("establishing systems for guests to report security issues").

[8] *See also K.M. v. CPA Hotels of Atlanta, LLC*, No. 1:23-cv-190, 2023 WL 5747490, at *2 (N.D. Ga. Aug. 30, 2023); *H.G.*, 489 F. Supp. 3d at 708-09.

Plaintiff only alleges that Choice is liable under CAVRA both for its purported beneficiary violation of 18 U.S.C. § 1595(a) and vicariously for the acts of its alleged Franchisee. Compl., ¶¶ 123-25.[9] Both of those theories fail substantively for the reasons given above. *See supra* at § A. Even so, § 2255 does not authorize claims premised on beneficiary violations of § 1595(a), nor does it provide for secondary liability of any kind. Accordingly, Plaintiff's § 2255 claim as to Choice should be dismissed.

Whether § 2255 provides for such a cause of action is a question of statutory construction. "When addressing issues of statutory interpretation, our first step is determining whether the statutory text is 'plain and unambiguous.'" *Seago v. O'Malley*, 91 F.4th 386, 390 (5th Cir. 2024) (citing *United States v. Kaluza*, 780 F.3d 647, 658 (5th Cir. 2015)). "If so, [courts] enforce the statute's plain meaning, unless absurd." *Id*. (citing *Trout Point Lodge, Ltd. v. Handshoe*, 729 F.3d 481, 486 (5th Cir. 2013)). Such is the case here.

Section 2255 provides, in relevant part:

> Any person who, while a minor, was a victim of a violation of section 1589, 1590, 1591, 2241(c), 2242, 2243, 2251, 2251A, 2252, 2252A, 2260, 2421, 2422, or 2423 of this title and who suffers personal injury as a result of such violation, regardless of whether the injury occurred while such person was a minor, may sue in any appropriate United States District Court and shall recover the actual damages such person sustains or liquidated damages in the amount of $150,000, and the cost of the action. . . .

18 U.S.C.A. § 2255(a) (West). By its plain language, § 2255 expressly limits a private cause of action as to the *criminal perpetrator(s)* of the *enumerated provisions* (such 18 U.S.C. § 1591). It does not authorize suit for civil violations of § 1595(a), nor does it provide for secondary liability of any sort. As such, Plaintiff's purported § 2255 claims against Choice necessarily fail.

---

[9] *Accord* Compl., ¶¶ 117-18 (asserting perpetrator TVPRA claims against Franchisee, but not Choice).

Case law confirms this result. Absent clear authorization from Congress, secondary and vicarious liability do not automatically apply to statutorily created causes of action. *See Cent. Bank of Denver, N.A.*, 511 U.S. at 171-91 (rejecting secondary civil liability where not expressly authorized within the statutory text); *United States ex rel. Wright v. AGIP Petroleum* Co., No. 5:03-CV-264(DF), 2007 WL 9759051, at *7 (E.D. Tex. Jan. 3, 2007) (expressing doubt, on the basis of *Central Bank*, that a "common law cause of action may be properly based on a federal statutory scheme"). While the Supreme Court has been willing to consider secondary liability in the context of civil rights statutes, it has not done so where the underlying conduct is an alleged crime. *See Meyer v. Holley*, 537 U.S. 280, 287 (2003); *compare with Central Bank,* 511 U.S. at 171-91; *see also Twitter, Inc. v. Taamneh*, 598 U.S. 471, 488, 143 S. Ct. 1206, 1220, 215 L. Ed. 2d 444 (2023) ("Importantly, the concept of 'helping' in the commission of a crime—or a tort— has never been boundless. That is because, if it were, aiding-and-abetting liability could sweep in innocent bystanders as well as those who gave only tangential assistance."). And for good reason: the notion that a plaintiff can hold a civil tortfeasor secondarily liable for a *criminal* violation contravenes the *mens rea* requirements applicable to same.

*Central Bank* rejected the existence of secondary liability under § 10(b) of the Securities Exchange Act, after banks failed to raise the alarm of Enron's impending collapse. The *Central Bank* Court found that, because the financial institutions' conduct did not constitute a "manipulative or deceptive" (i.e. intentional) practice proscribed by Congress, they could not be held liable under the statute. 511 U.S. at 167. The Supreme Court's detailed analysis addressed the statutory origins and lower courts' treatment of secondary liability, but explicitly premised the lack of secondary liability in "the text of the statute." *Id.* at 173. *Central Bank* held that "the statutory

text controls the definition of conduct" covered by the given statute, and the lack of explicit statutory language authorizing secondary liability precludes bringing such a claim. *Id.* at 175.

Though *Central Bank* is the landmark decision in this area, it follows from a longstanding doctrine requiring courts to apply the express statutory language in determining the scope of statutorily created liability. "*Ernst & Ernst*, [an earlier case,] considered whether negligent acts could violate § 10(b)," and rejected the SEC's argument that "broad congressional purposes behind the Act" justified imposition of liability for negligent conduct. *Id.* at 173 (discussing *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 197 (1976)). The Supreme Court subsequently reaffirmed *Ernst & Ernst* in *Santa Fe Industries, Inc. v. William Green*, finding that the statutory language "gives no indication that Congress meant to prohibit any conduct" that is not prohibited by the statute. 430 U.S. 462, 473 (1977). Again, in *Chiarella v. United States*, 445 U.S. 222, 232 (1980), the Supreme Court rejected the notion that conduct not prohibited by statutory text can give rise to liability, even where the purported actions are nominally similar. *Id.* ("First not every instance of financial unfairness constitutes fraudulent activity under § 10(b)."). In so doing, the *Chiarella* Court refused to read into the statutory text an implied "general duty between all participants in market transactions"—the very "element required to make silence fraudulent" under the statute. *Id.* at 232-33.

Importantly, the reasoning of *Central Bank* is based on principles of statutory construction, not the specific underlying statute. *See* 511 U.S. at 171-91. "[I]t is the Supreme Court's approach to interpreting the statute, not the actual statute itself, that is significant . . . the fact that the court was interpreting a different act of Congress [] is inconsequential." *Freeman v. DirecTV, Inc.*, 457 F.3d 1001, 1006 n.1 (9th Cir. 2006). For that reasoning, it is not limited to securities law, but applies to any federal statute. *See, e.g.*, *id.* at 1007 (finding secondary liability does not exist under

§§ 2702 and 2707 of the Electronic Communications Privacy Act); *see also Ass'n of Flight Attendants, et al. v. Skywest Airlines, Inc., et al.*, No. 2:23-CV-00723-DBB-DBP, 2025 WL 3537390, at *3 (D. Utah Dec. 9, 2025) ("Because the [Computer Fraud and Abuse Act] does not include the words 'aid' or 'abet,' or any language creating vicarious liability, it does not create any civil liability based on aiding and abetting a violator."); *Mandel v. Daskal*, No. 23-CV-7352 (RER) (VMS), 2025 WL 2452362, at *4 (E.D.N.Y. Aug. 25, 2025).

Numerous courts have rejected the notion of secondary liability under § 2255 due to the absence of any supporting language in the statute. These courts have held that civil claims are only authorized against direct, criminal participants (i.e. those with actual knowledge) in the referenced violations. *See, e.g., Mandel*, 2025 WL 2452362, at *4; *see also Doe 1 v. Deutsche Bank Aktiengesellschaft*, 671 F. Supp. 3d 387, 411 (S.D.N.Y. 2023); *Ramsbottom v. Ashton*, No. 3:21-CV-00272, 2022 WL 106733, at *14 (M.D. Tenn. Jan. 11, 2022); *Noble v. Weinstein*, 335 F. Supp. 3d 504, 525 (S.D.N.Y. 2018); *Jean-Charles v. Perlitz*, 937 F. Supp. 2d 276, 287 (D. Conn. 2013).

There is also no principle of statutory interpretation that could transpose constructive knowledge civil liability under 18 U.S.C. § 1595—the civil remedies provision of the TVPRA—onto § 2255 simply because both provisions allow private recovery to victims of § 1591 "violations." "The fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action for the injured person." *Smalls v. Wahl*, No. 25-CV-4852, 2025 WL 3470045, at *2 n.6 (E.D. Pa. Dec. 2, 2025). It likewise does not follow that a civil claim under one federal statute, i.e. § 1595, necessarily authorizes civil suit under another, i.e. § 2255. This is particularly true where, as here, nothing in CAVRA acknowledges a constructive knowledge standard of liability or § 1595 itself. *See also Virginia Innovation Scis., Inc. v. Amazon.com, Inc.*, No. 4:18-CV-474, 2019 WL 3082314, at *7 (E.D. Tex. July 15, 2019)

(rejecting an "implicit nexus requirement" between federal provisions where the statutory text is silent).

Rather, § 2255 exclusively references criminal statutes detailing criminal penalties for criminal conduct. None of these enumerated statutes create secondary liability, vicarious or otherwise. To read liability into these statutes beyond conduct actually prohibited by their text would contravene the explicit directions from the Supreme Court. *See, e.g.*, *Smalls,* 2025 WL 3470045, at *2 n.6 (noting that "the United States Supreme Court has stated that, unless specifically provided for, federal criminal statutes rarely create private rights of action" and discussing *Nashville Milk Co. v. Carnation Co.*, 355 U.S. 373, 377 (1958); *Cent. Bank of Denver,* 511 U.S. at 190); *see also Freeman v. TD Bank*, No. 25-1394, 2025 WL 3268455, at *2 (3d Cir. Nov. 24, 2025).

Courts that have approved secondary liability claims under § 2255 are further inapposite to the allegations presented here,[10] and disregard Supreme Court authority. *See, e.g.*, *T.D.P. v. Choice Hotels Int'l., Inc.*, 725 F. Supp. 3d 784 (S.D. Ohio 2024); *see also Jane Doe No. 8 v. Royal Caribbean Cruises, Ltd.*, 860 F. Supp. 2d 1337, 1339 (S.D. Fla. 2012) (applying maritime law). In *T.D.P.*, the court reasoned that the lack of limiting language on who may be sued under § 2255— i.e. silence as to appropriate litigants—compelled finding that no such limitation exists and the § 2255 claim could proceed. 725 F. Supp. 3d at 791. But the fundamental premise underlying this reasoning—that extra-textual common law principles can broaden a statute's scope of liability—

---

[10] *Jane Doe 8*, on which *T.D.P.* partially based its reasoning, is premised on and limited to maritime law, which is an accepted departure from normal principles cautioning against recognizing secondary liability. *See Jane Doe No. 8*, 860 F. Supp. 2d at 1340 ("[A]bsent a clear statutory purpose to the contrary, this Court must presume that Congress intended to incorporate this long-standing principle of federal maritime law when enacting § 2255."); *see also Mandel*, 2025 WL 2452362, at *4.

takes precisely the opposite stance as that espoused in *Central Bank*. *See* 511 U.S. at 171-91; *see also Alexander v. Sandoval*, 532 U.S. 275, 286 (2001) ("Like substantive federal law itself, private rights of action to enforce federal law must be created by Congress.").

*Central Bank* rejected expanding the scope of statutorily created liability beyond the statutory text, and concomitantly affirmed that the absence of clarifying language lends to *limiting* applicable scope, not expanding it. 511 U.S. at 177; *Alexander,* 532 U.S. at 292. *T.D.P.*'s contradictory holding conflicts with *Central Bank*. Moreover, as other Courts have noted, *T.D.P.* does not "discuss, or even cite to, *Central Bank*, which is the controlling authority." *Mandel,* 2025 WL 2452362, at \*4. *T.D.P.*'s key logic—that textual silence constitutes congressional approval of broad remedial measures—also fails to acknowledge that even remedial federal statutes cannot supersede the plain statutory text. *See, e.g.*, *Middlesex Cnty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 14-15 (1981) (refusing to permit "additional judicial remedies" (i.e. damages) in private civil suit provisions beyond that expressly included in the statute, despite express inclusion of a private enforcement mechanism). This Court should reject *T.D.P.*'s extra-textual approach in favor of Supreme Court precedent. *See Alexander v. Sandoval*, 532 U.S. 275, 287 (2001) ("Raising up causes of action where a statute has not created them may be a proper function for common-law courts, but not for federal tribunals.").

In any event, § 2255 does provide a clear textual intent to limit the scope of recovery to those actually responsible for the alleged wrongful conduct, and not those who supposedly benefitted without actual knowledge of the underlying conduct—the enumerated criminal statutes. The distinct enforcement and relief provisions of § 2255 and § 1595, respectively, affirm § 2255's more limited application. *See, e.g.*, *Middlesex Cnty. Sewerage Auth.*, 453 U.S. at 14-15. Here, § 2255 speaks solely in terms of a "victim" who may bring suit, for "a violation" of the enumerated

criminal statutes,[11] and "personal injury as a result of such violation." 18 U.S.C. § 2255(a). The causal link required under § 2255—"suffers personal injury *as a result of* such violation"—limits litigants to those who could be culpable under the listed *criminal* statutes—the aforementioned "violation." *Ramsbottom,* 2022 WL 106733, at *13-14 (finding that § 2255 liability only makes sense if it is limited to the actual perpetrator because "it requires a personal injury arising from the violation"); *accord Taamneh*, 598 U.S. at 499 (rejecting § 2333 liability for those who merely provide their services to the public). There is no textual basis to find that "violation"-dependent liability extends to any person conceivably liable in tort for behavior that is not a "violation" under the enumerated provisions. *See also Taamneh*, 598 U.S. at 501, n.14 (acknowledging a lack of caselaw holding companies liable for failing to block criminal use of their services, and that "when legislatures have wanted to impose a duty [to act], they have apparently done so by statute").

In keeping with *Central Bank* and its progeny, Plaintiff has failed to plausibly allege a claim under § 2255 against Choice.

**D.      Venue is not proper in the Eastern District of Texas.**

Beyond her failure to plausibly allege recoverable causes of action against Choice, Plaintiff has filed the instant suit in the wrong venue. Plaintiff alleges that the current action is properly venued in the Eastern District of Texas because: (1) "all Defendants are residents of the Eastern District of Texas" pursuant to 28 U.S.C. § 1391(c)(2); and (2) 28 U.S.C. § 1391(b)(1) allows suit in a judicial district in which any defendant resides if all defendants are residents of the state in which the district(s) sits. Compl., ¶¶ 14-16.

---

[11] These are Sections 1589, 1590, 1591, 2241(c), 2242, 2243, 2251, 2251A, 2252, 2252A, 2260, 2421, 2422, or 2423 of Title 18 (the federal criminal code).

As provided herein, Plaintiff has not stated a valid claim under § 2255 against Choice, and thus it cannot serve as the basis for Plaintiff's venue argument against same. Moreover, there is no need to resort to such a provision. The ordinary venue rules still apply, and there plainly exists in this case "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." *See* 28 U.S.C. § 1391(b)(2).

## V.   CONCLUSION

For all the foregoing reasons, Choice's Motion to Dismiss should be granted, and all claims asserted against Choice should be dismissed. Alternatively, Plaintiff's action should be transferred to the Northern District of Georgia upon dismissal of her CAVRA claim.

This Motion to Dismiss is respectfully submitted this the 16th day of March, 2026.

BAKER DONELSON BEARMAN
CALDWELL & BERKOWITZ, PC

By: */s/ Katriel C. Statman*
Katriel C. Statman
SBN: 24093197
1301 McKinney Street, Suite 3700
Houston, Texas 77010
Phone: 713-650-9700
*kstatman@bakerdonelson.com*

Sara M. Turner
(pro hac vice forthcoming)
1901 6th Avenue North
Suite 2600
Phone: (205) 328-0480
*smturner@bakerdonelson.com*

***Counsel for Defendants Choice Hotels International, Inc. and Choice Hotels International Services Corp.***

**CERTIFICATE OF SERVICE**

I, Katriel C. Statman, certify that on March 16, 2026, I caused the foregoing Motion to Dismiss Complaint to be filed with the Clerk of the Court and served upon all counsel of record via the Court's CM/ECF system.

*/s/ Katriel C. Statman*
Katriel C. Statman
