| | |
|---|---|
| JANE DOE (R.B.), an individual, | |
| *Plaintiff,* | |
| v. | Civil Action No.: 9:26-cv-00019 |
| CHOICE HOTELS INTERNATIONAL SERVICES CORP., CHOICE HOTELS INTERNATIONAL, INC., AND S&S HOTELS, INC. | |
| *Defendants.* | |

**DEFENDANT CHOICE HOTELS INTERNATIONAL, INC. AND CHOICE HOTELS INTERNATIONAL SERVICE CORPORATION'S**
**REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT OR, IN THE ALTERNATIVE, TO TRANSFER VENUE AND INCORPORATED MEMORANDUM IN SUPPORT**

Plaintiff's Complaint fails to plausibly assert any viable claim against Choice Hotels International, Inc. or the improperly named Choice Hotels International Services Corporation (collectively "Choice"). Plaintiff has invoked jurisdiction and venue in this Court based on her claim under the Child Abuse Victims' Rights Act ("CAVRA"), 18 U.S.C. § 2255. But that statute only permits claims against a criminal perpetrator from among a list of enumerated offenses and Plaintiff does not (and could not) allege that Choice is such a perpetrator. More generally, nothing in the Complaint provides notice of Plaintiff's alleged trafficking. Rather, Plaintiff offers only conclusory generic allegations, lacking the specificity demanded by *Twombly* and *Iqbal*. Nothing in her Response cures  the pleading deficiencies and  errors with her Complaint.

For the reasons previously briefed and below, Choice respectfully requests that its Motion to Dismiss be granted, or, in the alternative, that this Court transfer this matter to the Northern District of Georgia, the location where the alleged events occurred and a District that can properly

exercise jurisdiction over Choice and the Hotel's owner/operator, co-Defendant S&S Hotels, LLC ("S&S").

**ARGUMENT**

**A. Statutory Text and Supreme Court Precedent Reject the Existence of Secondary Liability under 18 U.S.C. § 2255.**

Plaintiff's lone jurisdictional anchor before this Court is her CAVRA claim. *See* ECF No. 11 at 12–20. The plain terms of that statute require any Plaintiff to be both a "minor" and a victim." 18 U.S.C. § 2255(a). In other words, any CAVRA cause of action must be brought by a "victim" based upon *conduct* that violates one of the criminal provisions in § 2255(a).

Plaintiff has not alleged that Choice violated any of the enumerated criminal provisions. As a result, her claim is necessarily based on a theory of secondary liability which fails on a simple and widely accepted principle: "Statutory silence on the subject of secondary liability means there is none." *G.G. v. Salesforce.com, Inc.*, No. 20 C 2335, 2026 WL 45021, at *10 (N.D. Ill. Jan. 7, 2026) (quoting *Boim v. Holy Land Found. for Relief & Dev.*, 549 F.3d 685, 689 (7th Cir. 2008)). "Congress has [expressly] imposed forms of secondary liability in other statutes, so the lack of such liability in a statute indicates 'a deliberate congressional choice with which the courts should not interfere." *Id.* (quoting *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 184 (1994)). Whether a statute creates vicarious liability is a purely legal question that looks to the text adopted by Congress. *See Boim*, 549 F.3d at 689 ("[In *Central Bank of Denver*,] [t]he Court discussed the securities laws at length, but nothing in its holding turns on particular features of those laws.").

In recognition of the deficiency, Plaintiff argues that what should matter is the *party* against whom such a claim is brought. This is simply incorrect. Both the statutory text and Congressional record make clear that § 2255 targets specific, criminal conduct. *Accord* 132 Cong. Rec. E3242-

02, 1986 WL 784722 ("[Section 2255] would impose both civil and criminal penalties on those engaging in such coercion . . . . the bill specifically deals with 'conduct,' not 'content.'"). This is the position of numerous courts to consider the issue. *See G.G.*, 2026 WL 45021, at *10; *Mandel v. Daskal*, No. 23-CV-7352 (RER) (VMS), 2025 WL 2452362, at *3 (E.D.N.Y. Aug. 25, 2025) (collecting cases); *Doe v. Varsity Brands, LLC*, No. 1:22-CV-02139, 2023 WL 4931929, at *8–9 (N.D. Ohio Aug. 2, 2023) (distinguishing opinions that allowed for secondary liability under § 2255); *Doe v. Hansen*, No. 4:16-CV-546 JAR, 2018 WL 2223679, at *6 (E.D. Mo. May 15, 2018), *aff'd sub nom. Doe v. Fort Zumwalt R-II Sch. Dist.*, 920 F.3d 1184 (8th Cir. 2019) (same); *Jean-Charles v. Perlitz*, 937 F. Supp. 2d 276, 281 (D. Conn. 2013); *Smith v. Husband*, 376 F.Supp.2d 603, 611 (E.D. Va. 2005). And, here, Plaintiff's allegations against Choice do not involve criminal conduct—as § 2255 requires—but civil allegations. *See* ECF No. 11.

Against this wall of decisions, Plaintiff offers a handful of inapplicable rulings that mistakenly focus on the identity of the § 2255 defendant, rather than the alleged conduct underlying the § 2255 claim. *See* ECF No. 20 at 28-30. These few contrary decisions largely arise from a single court in the Southern District of Ohio,[1] and do not address even the existence of *Central Bank* nor the numerous other District Courts that have expressly evaluated secondary liability under § 2255.[2] Those cases instead commit the error of following the maritime-law decision of *Jane Doe No. 8 v. Royal Caribbean Cruises, Ltd.*, 860 F. Supp. 2d 1337 (S.D. Fla. 2012). *See, e.g.*, *Bates v. Sequel Youth & Fam. Servs., LLC*, No. 2:23-CV-01063-RDP, 2026 WL 86833, at *5 (N.D. Ala. Jan. 12, 2026); *K.F.*, 2024 WL 1256052 (S.D. Ohio Mar. 25, 2024). Yet

---

[1] *See, e.g.*, *K.F. v. Choice Hotels International, Inc.*, 2024 WL 1256052 (S.D. Ohio Mar. 25, 2024).

[2] Though Plaintiff cites in support *Bates v. Sequel Youth & Fam. Servs., LLC*, 2026 WL 86833 at *5 (N.D. Ala. Jan. 12, 2026), (ECF No. 20, p. 31), that Court only considered a single other case to look at these issues, *Ramsbottom v. Ashton* (2022 WL 106733, at *1 (M.D. Tenn. Jan. 11, 2022).

*Jane Doe No. 8* was explicit that its reasoning regarding secondary liability was rooted in the "well-established canon of construction that '[s]tatutes which invade the common law or the general maritime law are to be read with a presumption favoring the retention of long-established and familiar principles.'" 860 F. Supp. 2d at 1339. And, in that context, exists "the principle of federal maritime law that a cruise line is strictly liable for a crew member's assault of a passenger." *Id.* Entirely absent from Plaintiff's theory is any explanation of how a case grounded in unique maritime law concepts can provide a basis for reading § 2255 to embrace secondary liability generally. *See, e.g.*, *Mandel*, 2025 WL 2452362, at *4; *Doe v. Varsity Brands, LLC*, 2023 WL 4935933, at *1. The reason for this silence is that such a result would necessarily contravene the holding in *Central Bank*.

Even if Plaintiff's statutory interpretation could somehow be reconciled with *Central Bank*, it would produce strange results. For example, each of the enumerated provisions cited in § 2255 are criminal statutes which, in turn, require a criminal *mens rea* (usually, actual knowledge). As a result, none of these provisions concern conduct that is civilly tortious, such as for participant/beneficiary liability under 18 U.S.C. § 1595(a), nor do they provide for a negligence-type *mens rea*, which Plaintiff expressly argues applies to her § 1595(a) claim. ECF No. 20 at 30. Even the few courts which have permitted secondary liability claims under § 2255 have largely recognized only aiding and abetting liability (actual knowledge), not vicarious liability (constructive knowledge). *See City of Gauley Bridge*, 2022 WL 3587827, at *13 (citing in support *see Doe v. Liberatore*, 478 F.Supp.2d 742, 756 (M.D. Pa. 2007); *Doe v. Schneider*, No. 08-3805, 2013 WL 5429229, at *11 (E.D. Pa. Sept. 30, 2013) (relying on *Liberatore*); *M.A. ex rel. P.K. v. Village Voice Media Holdings, LLC*, 809 F.Supp.2d 1041, 1053-55 (E.D. Mo. 2011)).

If Congress objected to rulings that limit secondary liability under § 2255, and actually intended § 2255 to encompass non-criminal conduct, it could have clarified the text in March 2013 (§ 2255's first textual amendment post-passage of the TVPRA), or in February 2018 (second amendment post-passage of the TVPRA), or in 2022 (third amendment post-passage of the TVPRA). It did not. The result is that, even assuming Plaintiff does not plead that Choice should be attributed the predicate *conviction*, she must still allege that Choice directly violated one of the predicate offenses in order to state any § 2255 claim against it. *See, e.g.*, *G.G.*, 2026 WL 45021, at *9 (collecting cases); *see also Wheeler v. Pilgrim's Pride Corp.*, 591 F.3d 355, 361 (5th Cir. 2009) (noting that where "Congress ha[d] amended [the statute] seven times without making any changes that would affect the many court interpretations," the necessary implication is that the interpretation is accurate). But Plaintiff has not alleged that Choice violated an enumerated criminal statute, acted with the requisite mental intent (actual knowledge), or directly caused her alleged trafficking injury.

### B. Plaintiff's Construction of the TVPRA Contravenes that Statute's Text and the Reasoning of Most Courts, Including All of the Courts of Appeal to Consider It

Choice previously explained that most courts have rejected TVPRA claims like Plaintiff's. *See* ECF No. 11 at 5 n.2. The exception is a line of cases tracing to *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959 (S.D. Ohio 2019), on which Plaintiff largely grounds her argument. *See* ECF No. 20 at 31. *M.A.* turns entirely on the view that the mere renting of rooms to traffickers amounts to a "continuous business relationship" which supports the inference of a "tacit agreement" between the traffickers and the hotel franchisees and, still more remotely, the brand franchisors. 425 F. Supp. 3d at 970. But multiple courts, including Courts of Appeal, have rejected that ordinary commercial conduct constitutes a "business relationship" which can give rise to an inference of "tacit agreement." *See, e.g.*, *A.G. v. Northbrook Indus., Inc.*, 171 F.4th 1257, 1269

(11th Cir. 2026) ("Merely renting a hotel room to a trafficker with actual or constructive knowledge of his trafficking does not constitute 'participation in a venture'" (citation omitted)); *Doe 1 v. Apple, Inc.*, 96 F.4th 403, 416 (D.C. Cir. 2024) (rejecting "tacit agreement" argument). And the Seventh Circuit, in the context of far more extreme facts, has explained that a "continuous business relationship" must mean a long-term business engagement furnishing "targeted solutions" and "active, ongoing support" to a counterparty "whose business model was built upon systematic and widespread violations of Section 1591." *G.G. v. Salesforce, Inc.*, 76 F.4th 544, 560–62 (7th Cir. 2023) ("participation in venture" does not refer to an "arms-length seller of off-the-shelf products" and rejecting the application of such standard to franchisors under the type of facts alleged here).

1. **Plaintiff Fails to Plausibly Plead Choice's "Participation" in a Trafficking Venture.**

Plaintiff has not plausibly alleged that Choice knowingly "benefitted" from its knowing "participation in a venture" that it knew or should have known was trafficking. Plaintiff claims to plead two separate "ventures"—one a trafficking venture, the other commercial—but does not meaningfully explain how Choice's franchise agreement with franchisee links to traffickers' rental of rooms. Neither venture can meet the elements of § 1595(a) independently and both rest upon the same sparse allegations and deeply flawed theory that any amount of room rentals constitutes "tacit approval" with the venture that has allegedly violated 18 U.S.C. §1591. That is not the standard followed by any Courts of Appeals to have considered such claims.

"Mere 'arms-length transactions' are simply not enough involvement to constitute 'participation in a venture.'" *Northbrook Indus.*, 171 F.4th at 1269 (quoting *Apple*, 96 F.4th at 41). Rather, "something more than engaging in an ordinary buyer-seller transaction is required to establish 'participation' in an unlawful venture." *Apple*, 96 F.4th at 415; *Riti*, 2024 WL 505063, at

* 4 (allegations that "the franchisors managed and 'were inextricably connected to the renting of rooms'" did not state a TVPRA claim (quoting *Red Roof*, 21 F.4th at 726–27)). This Court has itself reached similar decisions in evaluating TVPRA allegations against alleged owner-operators. *See Jane Doe (T.D.B.), v. G6 Hospitality, LLC*; *et al.*, No. 9:23-CV-00174, 2026 WL 1008529, at *4 (E.D. Tex. Apr. 6, 2026) (granting summary judgment to owner/operator hotel defendant and distinguishing between a "continuous business relationship" with the plaintiff and the statutorily required relationship with her trafficker).

Decisions like *Ricchio v. McLean*, 853 F.3d 553 (1st Cir. 2017), meanwhile, explain exactly what is required to plead franchisor liability.[3] Plaintiff's view produces a statutorily unsupportable result that a franchisor is always liable when criminal traffickers happen to rent a hotel room, even once, at a franchisee's hotel. The decisions cited above recognize "participation" as meaning something more than a standard commercial transaction. *See Northbrook Indus.*, 171 F.4th at 1269; *Apple*, 96 F.4th at 414–15. And, as this Court has observed, the participation must be a venture with Plaintiff's alleged trafficker, not a "hotel-operating venture" with Defendant Choice's franchisee. *See* ECF No. 20 at p. 9-10.

### 2. Plaintiff Fails to Plausibly Plead That Choice's "Participation" in Commercial Venture Violates the TVPRA.

Plaintiff alleges a second, "commercial hotel-operating" venture between Choice—as franchisor—and the independent owner/operator of the hotel, co-Defendant S&S—as franchisee. *See* ECF No. 20 at pp. 9-10. Despite claiming that this venture is separately actionable from the first,

---

[3] *See Ricchio*, 853 F.3d at 555 (finding sufficient, *inter alia*, that "hotel operator and trafficker" had "prior commercial dealings . . . , which the parties wished to reinstate for profit" and "exchang[ed] high-fives in the motel's parking lot while speaking about 'getting this thing going again,' in circumstances in which [the trafficker's] coercive and abusive treatment of [plaintiff] as a sex slave had become apparent to [the operator]").

it relies on the same alleged facts, same alleged trafficking violations, same alleged financial benefits (profits from renting rooms to traffickers), and same alleged risks to its supposed participants. *See* Compl. ¶ 122. It is, for all intents and purposes, identical to the first venture, and merely garbed in different verbiage, and only differs in that it lacks any connection to plaintiff's alleged traffickers. *See S.B.C. v. Six Continents Hotels, Inc.*, No. 2:24-cv-01985, 2025 WL 2637655, at *6 (W.D. Wash. Sept. 12, 2025) (holding that "a business venture between only Defendants cannot satisfy the participation in a venture requirement"). Even assuming such commercial "ventures" exist, they cannot standing alone satisfy the requirements of the TVPRA. *See, e.g.*, *Northbrook Indus.*, 171 F.4th at 1269 (rejecting conflation of ventures, noting "[t]he problem is that none of these potential [venture] profits or risks are common to both the traffickers and the hotel operators.").

Plaintiff attempts to liken this venture to the one alleged in *G.G. v. Salesforce.com, Inc.*, 76 F.4th 544 (7th Cir. 2023). *See* ECF No. 20 at 12-13. Plaintiff implicitly recognizes that *Salesforce* involved extreme facts absent here[4] and, moreover, rejected liability for "off-the-shelf" transactions. 76 F.4th at 562; *see also Northbrook Indus.*, 171 F.4th at 1269. She thus inflates Choice's purported involvement in operating the Hotel, touting Choice's "central" role in rentals and nondescript "control over operational aspects related to trafficking activity." ECF No. 20 at p. 14. But, even accepting Plaintiff's pleadings as true, it is not the contractual relationship between Choice and S&S standing alone which gives rise to Plaintiff's claims; it is that third-party traffickers allegedly committed criminal acts against Plaintiff at the hotel owned and operated by S&S. The relevant level of analysis is therefore not the Franchise Agreement, but the alleged room rentals by criminal traffickers. It is only when a commercial counterparty, "whose business model [i]s built upon systematic and widespread violations [of criminal trafficking laws]" that said business counterparty

---

[4] *See Salesforce*, 76 F.4th at 555.

is essentially indistinguishable from a sex trafficker for TVPRA purposes. *Salesforce.com*, 76 F.4th at 560–61; *see T.D.B.*, No. 9:23-CV-00174, 2026 WL 1008529, at \*4. In other words, Plaintiff cannot borrow elements between ventures in the hopes of pleading a recoverable claim. *See, e.g.*, *T.D.B.*, No. 9:23-CV-00174, 2026 WL 1008529, at \*4; *see also G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 559 (7th Cir. 2023).

### 3. Plaintiff Fails to Plausibly Plead That Choice had the Requisite Knowledge of Her Allegations.

Plaintiff cannot plausibly allege a TVPRA claim on the basis of generalized, industry-level awareness and generic allegations concerning purported "red flags," alone or in totality. *See* ECF No. 20 at 22–23. As this Court has previously recognized, generalized knowledge of an industry-wide issue is insufficient. *Doe (K.E.C.) v. G6 Hosp., LLC*, 750 F. Supp. 3d 719, 732 (E.D. Tex. 2024). As to Plaintiff's purported red flag allegations, meanwhile, they are not premised on alleged facts and inherently rely on conjecture to further Plaintiff's conclusion.

A recent decision explains precisely why virtually identical "red flag" allegations—advanced in a largely copied-and-pasted pleading against Choice also brought by instant Plaintiff's counsel—are insufficient. In that case, *C.T.K.*, the complaint alleged that sex trafficking was prevalent at the hotel and that law enforcement had been regularly called out "regarding sex offenses, illegal drugs, and harassment." 2026 WL 84449, at \*2. As here, the pleading further claimed that Choice should have known or did know about this trafficking based on "both public sources like internet reviews and non-public sources like internal investigations, customer complaints, surveillance systems, and law enforcement reports." *C.T.K.*, 2026 WL 84449, at \*5.

The District Court found these allegations insufficient to plead Choice's knowledge, even

under the more relaxed standards of *Salesforce* (which constituted binding precedent for that Court).[5]

To begin, the Court observed that "'red flags' are warning signs, not actual knowledge." *C.T.K.*, 2026 WL 84449, at *5. "Unless the hotel staff was stationed outside her door, which is not plausible, several of these 'red flags' would have been known only to Plaintiff and her trafficker"; for example, the "heavy foot traffic" in and out of the room, or the number of johns who visited Plaintiff. *Id*. As the Court noted, "red flags of the kind the [complaint] identifi[ed] may lead a proactive law enforcement officer to undertake an investigation to determine whether sex trafficking or other illegal conduct, such as prostitution or drug dealing, are going on at the hotel." *Id.* at *6. "But hotels are not law enforcement agencies," the Court concluded, and "[t]he TVPRA does not require hotels to monitor or surveil their guests." *Id.*

Nor is *C.T.K.* the only recent case to reach this conclusion. *P.T.L.*—another case brought by Plaintiff's counsel against Choice—also involved essentially the same set of knowledge allegations. *See P.T.L. v. Choice Hotels Int'l, Inc.*, No. CV-25-1812, 2025 WL 3280239, at *1–*2 (E.D. La. Nov. 25, 2025) (*P.T.L. I*). The *P.T.L.* Court found that the complaint failed to allege Choice's knowledge. *See id.* at *7. In particular, "allegations that impute constructive knowledge to Choice on the premise that it would have detected sex trafficking at the [hotel] if it had exercised diligence in training staff and implementing and enforcing policies for reporting and responding to sex trafficking are insufficient because the TVPRA does not impose an affirmative duty to prevent sex trafficking." *Id.* (citation and internal quotation marks omitted).

Notably, the *P.T.L.* plaintiff amended her initial complaint to "add[] allegations pertaining to

---

[5] *Compare C.T.K.*, 2026 WL 84449, at *4 (requiring that "the defendant knew or should have known that the venture had violated Section 1591") (emphasis added) *with Red Roof*, 21 F.4th at 725 (requiring that "the defendant must have either actual or constructive knowledge that the venture . . . violated the TVPRA as to the plaintiff") (emphasis added).

what the franchisee's employees supposedly saw or knew about her being trafficked at the subject hotel." *P.T.L. v. Choice Hotels Int'l, Inc.*, No. 25-1812, 2026 WL 177619, at *1 (E.D. La. Jan. 22, 2026) (*P.T.L. II*). But these facts did not "pertain[] to Choice," and so the amended complaint also "fail[ed] to plausibly allege that Choice participated in the sex-trafficking venture or that it had actual or constructive knowledge of the alleged sex trafficking at the subject hotel." *Id.* at *2. The Court thus dismissed Plaintiff's TVPRA claim with prejudice. *See id*.

*C.T.K. and P.T.L.* demonstrate how other District Courts, including within the Fifth Circuit, have construed the TVPRA to bar nearly identical claims. Nor are they the only recent cases to adopt this approach. *See, e.g.*, *Lydia K. v. G6 Hospitality Franchising LLC*, No. 3:25-CV-0755-N, 2026 WL 370057, at *1, *3–*4 (N.D. Tex. Feb. 10, 2026) (rejecting still stronger allegations as failing to show participation or knowledge by a franchisor).

## CONCLUSION

Choice urges the Court to grant its Motion to Dismiss, or, in the alternative, transfer this action to the Northern District of Georgia where the alleged events arose.

Respectfully submitted, this the 4th day of May, 2026.

BAKER DONELSON BEARMAN
CALDWELL & BERKOWITZ, PC

By: */s/ Katriel C. Statman*
Katriel C. Statman
SBN: 24093197
1301 McKinney Street, Suite 3700
Houston, Texas 77010
Phone: 713-650-9700
*kstatman@bakerdonelson.com*

Sara M. Turner
(pro hac vice forthcoming)
1901 6th Avenue North
Suite 2600

Phone: (205) 328-0480
*smturner@bakerdonelson.com*

***Counsel for Defendants Choice Hotels
International, Inc. and Choice Hotels
International Services Corp.***

**CERTIFICATE OF SERVICE**

I, Katriel C. Statman, certify that on May 4, 2026, I caused the foregoing Reply in Support to be filed with the Clerk of the Court and served upon all counsel of record via the Court's CM/ECF system.

*/s/ Katriel C. Statman*
Katriel C. Statman
